NICHOLS KASTER, PLLP
Rebekah L. Bailey, CA Attorney No. 258551
bailey@nka.com
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

NICHOLS KASTER, LLP
Matthew C. Helland, CA Attorney No. 250451
Helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

ERVIN, COHEN & JESSUP, LLP
Eric W. Cheung, CA Attorney No. 235008
echeung@ecjlaw.com
9401 Wilshire Blvd, Ninth Floor
Beverly Hills, CA  90212
Telephone: (310) 273-6333
Facsimile:  (310) 859-2325

Attorneys for Individual and Representative Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| KENT FARMER, as an individual and as a representative of the putative class,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BAC HOME LOANS SERVICING, L.P.,<br><br>　　　　Defendants. | Case No.: <u>8:11-cv-00739-CJC-RNB</u><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>(1) Breach of Contract; and<br><br>(2) Fraud.<br><br>**(DEMAND FOR JURY TRIAL)** |

　　　　Plaintiff Kent Farmer ("Plaintiff"), on behalf of himself and the putative class set forth below, and in the public interest, brings the following Complaint against Defendants Bank of America, N.A. ("BOA") and BAC Home Loans Servicing, L.P. ("BAC") (collectively, "Defendants").

## PRELIMINARY STATEMENT

1.     Plaintiff initiates this case in the U.S. District Court for the Central District of California pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).

2.     Defendants require Texas borrowers to maintain hazard insurance even when their mortgage agreements explicitly relieve them of this duty.  In inducing Texas borrowers to obtain insurance, Defendants fraudulently misrepresent the borrowers' duties under the controlling mortgage agreements. Defendants go as far as force placing Texas borrowers with hazard insurance even though the controlling mortgage agreements do not provide them with this authority.

3.     Based on Defendants' conduct as described herein, Plaintiff asserts:

     i.     A breach of contract claim against Defendants for requiring Plaintiff obtain insurance (and then force placing him with said insurance) despite the fact that no such insurance was required by his mortgage agreement; and

     ii.     A fraud claim against Defendants for representing that insurance was required as a condition of Plaintiff's loan when in fact it was not.

4.     Plaintiff asserts these claims on behalf of a Putative Class of Texas borrowers.   This class is defined without respect to whether Defendants force placed the insurance on class members or merely sent them form letters requiring them to purchase it themselves.  Because no insurance was in fact required as a term of class members' loans, Defendants breached their own loan agreements by requiring it, and committed fraud by claiming it was required.

5.     Plaintiff and the Putative Class seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct as described herein.

**THE PARTIES**

6.     Individual and representative Plaintiff Kent Farmer resides in Helotes, Texas and is a member of the Putative Class defined below.

7.     Defendant BOA is a national banking association headquartered in Charlotte, North Carolina.   BOA does business in the State of California and several other states throughout the country.  BOA is registered to do business in California with the California Secretary of State.

8.     Defendant BAC is headquartered in Calabasas, California.  BAC is a subsidiary of BOA that services loans and lines of credit originated and purchased by BOA.[1]  These include loans and lines of credit in Texas, as well as loans and lines of credit extended to California homeowners.  At all relevant times, BAC's conduct was approved, authorized, enabled, and ratified by BOA.

**JURISDICTION AND VENUE**

9.     This Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of Texas, and Defendants are citizens of different states.   The amount in controversy in this action exceeds $5,000,000.00, and there are more than 100 members of the Putative Class.

10.    Venue is proper here pursuant to 28 U.S.C. § 1391.  All Defendants regularly conduct business in California and reside in this district.  Assignment of this action to the Western Division is appropriate.

**FACTUAL ALLEGATIONS**

**A.     BACKGROUND ON PLAINTIFF'S LOAN**

11.    On January 17, 2008, Plaintiff obtained a home equity loan from BOA in the amount of $117,608.00 secured by a lien on his homestead.

12.    On January 17, 2008, Plaintiff signed a Homestead Lien Contract and

---

[1] Plaintiff has recently been informed by Defendants' attorneys that BAC merged with BOA on or around July 1, 2011.

SECOND AMENDED CLASS ACTION COMPLAINT

1    Deed of Trust ("Homestead Lien Contract").  (Ex. A.)

2        13.    On January 17, 2008, Plaintiff also signed a Promissory Note in
3    connection with this loan. (Ex. B.)

4        14.    BOA is the current lender-in-interest to Plaintiff's Homestead Lien
5    Contract.

6        15.    BAC services Plaintiff's home equity loan on behalf of BOA.

7        16.    The current principal balance of Plaintiff's home equity loan is less
8    than $112,000, and he does not have any other loans or lines of credit secured by
9    his property.

10        17.    Plaintiff is not in default on his loan and is up-to-date on all payments.

11   **B.    PLAINTIFF'S LOAN EXPLICITLY DOES NOT REQUIRE HIM TO**
12   **MAINTAIN HAZARD INSURANCE.**

13        18.    The second page of Plaintiff's Homestead Lien Contract contains the
14   following provision:

15        **PROPERTY DAMAGE INSURANCE.**  The following provisions
16        relating to insuring the Property are a part of this Homestead Lien
17        Contract:

18        **Maintenance of Insurance.**   *Owner at Lender's request shall*
19        *procure and maintain policies of fire insurance with standard*
20        *extended coverage endorsements on a replacement basis for the full*
21        *insurable value covering all improvements on the Real Property in*
22        *an amount sufficient to avoid application of any coinsurance clause,*
23        *and with a standard mortgagee clause in favor of Lender.*

24   (emphasis added).

25        19.    Despite the proviso on the second page of the Homestead Lien
26   Contract that the owner is required to maintain "fire insurance with standard
27   extended coverage endorsements," there is language on the fifth page of the
28   Homestead Lien Contract that creates an explicit exception to that requirement,

-4-

1  stating that, **notwithstanding** the prior language, BOA and BAC do **not** require

2  such insurance for loans made pursuant to Section 50(a)(6), Article XVI, Texas

3  Constitution:

4    **INSURANCE.** *Notwithstanding any language to the contrary in this*

5    *Homestead Lien Contract or in any Related Document, if this*

6    *Homestead Lien Contract secures an extension of credit pursuant to*

7    *Section 50(a)(6), Article XVI, Texas Constitution, Lender does not*

8    *require fire insurance with standard extended coverage endorsements*

9    *on the property.*  However, if as of the date of this Homestead Lien

10    Contract, Owner has in force such insurance on the Property, then all

11    such policies covering loss or damage to the Property shall include a

12    standard non contributory mortgagee clause in favor of Lender.

13  (emphasis added).

14    20.   The Homestead Lien Contracts entered into by members of the

15  Putative Class likewise exclude borrowers of credit pursuant to Section 50(a)(6),

16  Article XVI of the Texas Constitution from any fire insurance requirements.

17    21.   Plaintiffs Homestead Lien Contract, by its own explicit terms, secures

18  an extension of credit pursuant to Section 50(a)(6), Article XVI, of the Texas

19  Constitution. Indeed, the first page of the Homestead Lien Contract states:

20    **HOMESTEAD LIEN CONTRACT AND DEED OF TRUST**

21    **THE EXTENSION OF CREDIT EVIDENCED BY THIS HOMESTEAD LIEN CONTRACT**

22    **AND DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(A)(6),**

23    **ARTICLE XVI, TEXAS CONSTITUTION.**

24    22.   The Homestead Lien Contract states that it extends the type of credit

25  defined by Section 50(a)(6), Article XVI, of the Texas Constitution in no less than

26  six separate places, twice on the first page, twice on the fourth page, and twice on

27  the fifth page.

28    23.   The Promissory Note executed in conjunction with the Homestead

SECOND AMENDED CLASS ACTION COMPLAINT

Lien Contract also says it extends the type of credit defined by Section 50(a)(6), Article XVI, of the Texas Constitution.  It states:

> **HOME EQUITY LOAN**.  *THIS LOAN IS AN EXTENSION OF CREDIT OF THE TYPE DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION* and is made at an agreed rate authorized by Chapter 303 of the Texas Finance Code. Notwithstanding any provision to the contrary in this Note or in any other document, this loan is not secured by any collateral in addition to my homestead.

(emphasis added).

24.     In connection with obtaining the loan, Plaintiff was also provided with a document titled "Notice Concerning Extensions of Credit."  (Ex. C.)   This document sets forth various disclosures in connection with a loan which is made pursuant to Section 50(a)(6), Article XVI, of the Texas Constitution.

25.     All of the documents signed by Plaintiff in connection with his loan were drafted by BOA.

**C.     DESPITE THE FACT THAT INSURANCE IS NOT REQUIRED UNDER THE TERMS OF PLAINTIFF'S LOAN, DEFENDANTS FORCE PLACED UNAUTHORIZED INSURANCE.**

26.     From approximately May 15, 2009 through May 15, 2010, Plaintiff maintained hazard insurance on his property with Allstate.  During that period, Plaintiff paid approximately $800 in premiums in exchange for approximately $156,019 in coverage.

27.     Plaintiff's policy with Allstate lapsed on or about May 15, 2010.

28.     Defendants sent Plaintiff a letter dated June 13, 2010.  (Ex. D.)  The letter is on Bank of America letterhead and is signed "Sincerely, Hazard/Flood Insurance Unit."  The letter states that the recipient can write to "us" at an address for BAC Home Loans Servicing, LP located at a post office box in Forth Worth,

-6-

SECOND AMENDED CLASS ACTION COMPLAINT

1    Texas.

2        29.    The letter states: "In order to protect the dwelling structure, BAC

3    Home Loans requires that you maintain hazard insurance."

4        30.    The letter also indicated that if Plaintiff did not provide BAC with

5    proof of insurance on his property, BAC "may have to purchase insurance for

6    [him.]"   The letter advised Plaintiff that the insurance would cost $2,501 and

7    would be based on a coverage amount of $156,019.

8        31.    The letter further advised that the coverage BAC would purchase for

9    Plaintiff would be "more expensive and will not protect [Plaintiff] as fully as a

10   policy [he] could purchase."

11       32.    The letter explicitly informed Plaintiff that BAC's "licensed affiliated

12   insurance agency may receive a commission for placing this insurance, which may

13   be purchased from an affiliated insurer."

14       33.    The letter also includes a list titled "BAC HOME LOANS HAZARD

15   INSURANCE REQUIREMENTS."

16       34.    According to that list, Plaintiff was required to carry insurance in the

17   lesser of:

18       •  100% of the insurable value of the improvements as established by the

19          insurer or;

20       •  The unpaid principal balance of the loan; or

21       •  Notwithstanding the foregoing, if the unpaid principal balance is less

22          than 80% of the insurable value of the improvements, the coverage

23          amount must be at least 80% of the insurable value.

24       35.    The letter also states "The name on the policy must be the same as the

25   mortgagor/trustor/grantor of the security instrument or current owner in the case of

26   an assumption."

27       36.    Defendants sent Plaintiff a second letter dated July 12, 2010, (Ex. E),

28   which states "Your loan agreement requires that you have current evidence of

-7-

1   insurance. Please remit current evidence of hazard insurance."

2      37.   The letter continues:

3         If we do not receive your insurance the current deficient status of your

4         loan will remain. In addition you will be billed for any insurance

5         purchased to protect our interest in the property. This may be

6         significantly more expensive and provide less coverage than insurance

7         you could obtain on your own.

8      38.   On July 21, 2010, Defendants sent another letter. (Ex. F.) This letter

9   informed Plaintiff that hazard insurance had been purchased for his property. The

10  coverage amount was listed as being $156,019 and the cost of the policy was

11  represented as being $2,501.00.

12     39.   Banc of America Insurance Services, Inc. ("BAISI"), a nonbank

13  subsidiary of BOA and an affiliate of BAC, received a substantial commission in

14  connection with the force placement.

15     40.   The declarations page accompanying this letter indicated that the

16  policy had been acquired from Balboa Insurance Company ("Balboa"), an affiliate

17  of Defendant BAC until approximately June 1, 2011.

18     41.   According to the declarations page, the policy was backdated so that it

19  was effective as of May 16, 2010.

20     42.   Defendants likewise force placed hazard insurance on some members

21  of the Putative Class.

22     43.   Plaintiff subsequently acquired hazard insurance from Progressive

23  Home Advantage (underwritten by Ranchers & Farmers Mutual Insurance

24  Company) ("Progressive"). He purchased coverage in the amount of $243,000 and

25  was charged a premium of $608. This policy became effective on October 21,

26  2010.

27     44.   Plaintiff contacted several insurers seeking a backdated policy so he

28  would not have to incur any of the exorbitant charges associated with the

-8-

backdated Balboa force-placed policy.  No insurers would sell him a backdated policy.

45.   When Plaintiff provided Defendants with notice of his Progressive policy, Defendants cancelled the force-placed policy, and refunded him a portion of the premium.  However, Plaintiff was charged $1,083 for the period of time during which the backdated force-place policy was in force.  Plaintiff paid this amount.

46.   Plaintiff has made diligent efforts to obtain a copy of the actual policy that Defendants force placed on him, but has been unable to do so.

47.   Plaintiff called the phone number provided for "other inquiries" on the Declaration page provided by Balboa (866-265-3321).  Plaintiff provided the person who answered the phone with his "Policy Number."   The representative did not recognize the policy number as a valid number and asked Plaintiff for his Bank of America loan number, which Plaintiff provided.   The representative was then able to find Plaintiff in his system.

48.   During this conversation, Plaintiff asked, "Is this Balboa Insurance company I'm speaking with?"  In response, the representative told Plaintiff that he was in fact speaking with Bank of America home loans.

49.   Plaintiff then requested a copy of the full policy for the Balboa coverage which was in place from May 16, 2010 through October 21, 2010.  The representative refused to provide a copy of the policy.  Plaintiff was told that the representative would only send him a copy of the Declaration page, and he would not send Plaintiff a copy of the full policy because Defendant BAC, not Plaintiff, was the insured and the policy applied to numerous other properties, not just Plaintiff's property.

50.   Plaintiff then called Balboa's claims phone number (1-800-323-7466) and spoke with Balboa's representative.   Plaintiff again asked for a copy of the "full policy" that had been in effect on his property, and for which he had been

-9-

1    charged.  He was told that Balboa does not have any policy information and that he
2    should call 866-265-3321, which was the phone number for the Bank of America
3    home loan office that he had previously called.

4                        **CLASS ACTION ALLEGATIONS**

5        51.    Plaintiff asserts his claims on behalf of a Putative Class defined as
6    follows:

7        All persons who:

8            (1) have or had a loan or line of credit with Defendants that was
9        made pursuant to Section 50(a)(6), Article XVI, Texas Constitution;
10       and

11           (2) were required by Defendants to purchase hazard insurance
12       within the applicable statute of limitations.

13       52.    Numerosity:    The Putative Class is so numerous that joinder of all
14   class members is impracticable.  Plaintiff is informed and believes that during the
15   relevant time period, hundreds, if not thousands, of Defendants' customers satisfy
16   the definition of the Putative Class.

17       53.    Typicality:    Plaintiff's claims are typical of the members of the
18   Putative Class.  Plaintiff is informed and believes that his loan and mortgage
19   documents are typical of those of other Putative Class members, that the hazard
20   insurance notices he received were typical of those received by other Putative
21   Class members, that Defendants treated him consistent with other Putative Class
22   members in accordance with Defendants' standard policies and practices, that it
23   was typical for Defendants to require their customers to purchase and maintain
24   hazard insurance in an amount greater than that required by their Texas mortgage
25   documents, under fraudulent pretenses.

26       54.    Adequacy:    Plaintiff will fairly and adequately protect the
27   interests of the Putative Class, and has retained counsel experienced in complex
28   class action litigation.  There are no known conflicts between Plaintiff and the

                                      -10-

members of the class he seeks to represent.

55.   <u>Commonality</u>:   Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

a.   Whether Defendants breached their Texas Homestead Lien Contracts by requiring hazard insurance;

b.   Whether Defendants breached their Texas Homestead Lien Contracts by force placing insurance when the contracts did not authorize force placement;

c.   Whether Defendants have a pervasive policy and practice of misrepresenting to their customers that their mortgage agreements require hazard insurance when in fact they do not;

d.   Whether Defendants' standard hazard insurance notice letters are false, deceptive, misleading and/or fraudulent;

e.   The appropriateness and form of any equitable relief reversing charges for hazard insurance coverage, allowing customers to close loans or credit lines without first paying premiums for hazard insurance that were not necessary, ordering Defendants to cease and desist from such conduct in the future, or any other declaratory or injunctive relief;

f.   The appropriateness and proper measure of monetary and other damages sustained by the Putative Class; and

g.   The appropriateness and proper measure of any penalties, fines, or other remedies available to the Putative Class.

56.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

57.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in unnecessary insurance premiums and related charges that are readily calculable from Defendants' records and other class-wide evidence.   Members of the Putative Class do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any members of the Putative Class. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties.   In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum in California, where the policies and practices complained of herein originated.

58.     Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23.   The names and addresses of the Putative Class members are available from Defendants' records.

59.     Plaintiffs will seek to disburse notice to the Putative Class via regular U.S. mail and through the use of bill inserts to all Putative Class members who maintain outstanding loans or lines of credit with BOA and/or BAC.

SECOND AMENDED CLASS ACTION COMPLAINT

## COUNT ONE

### BREACH OF CONTRACT

### Asserted on Behalf of Plaintiff and the Putative Class

### Against BAC and BOA

60.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

61.   Plaintiff's Homestead Lien Contract does not require hazard insurance.

62.   Defendants breached the Homestead Lien Contract by requiring Plaintiff to obtain hazard insurance.

63.   Defendants further breached the Homestead Lien Contract through the unauthorized force placement of insurance on Plaintiff.

64.   Defendants' actions were willful and not the result of mistake or inadvertence.

65.   Defendants systematically and pervasively required other members of the Putative Class to obtain hazard insurance in spite of explicit contractual language to the contrary, and subsequently force placed members of the Putative Class with said insurance.

66.   As a direct result of Defendants' unlawful conduct, Plaintiff and the Putative Class have suffered damages in the form of insurance premiums, escrow charges, interest payments, and/or other charges, and unnecessary burdens on their property rights.

67.   Plaintiff and the Putative Class are entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

SECOND AMENDED CLASS ACTION COMPLAINT

## COUNT TWO

### COMMON LAW FRAUD

**Asserted on Behalf of Plaintiff and the Putative Class**

**Against BAC and BOA**

68.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

69.    Defendants falsely represented to Plaintiff and other Putative Class members that their hazard insurance coverage was not sufficient under their mortgage agreements when in fact no hazard insurance was required by their mortgage agreements.

70.    These representations were material.

71.    Defendants knew that they had no reasonable basis for making these representations, and they knew that such representations were not supported by their mortgage agreements.   These representations were made recklessly as a positive assertion without any knowledge of their truth.

72.    Defendants intended to induce Plaintiff and the Putative Class members to act upon the representations.

73.    These representations were made for the purpose of (i) unfairly and unconscionably maximizing revenue from such customers; (ii) generating interest, fees, commissions, and "other compensation" for BOA and its affiliates; (iii) providing a ready-made customer base for Balboa and BAISI; (iv) gaining unwarranted contractual and legal advantages; and (v) depriving Plaintiff and other Putative Class members of their contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase hazard insurance.

74.    Plaintiff and other members of the Putative Class reasonably and justifiably relied on Defendants' intentional misrepresentations, and based on those misrepresentations, paid for insurance coverage that was not required under their

-14-

1    mortgage agreements.

2        75.   As a direct result of Defendants' intentional misrepresentations,

3    Plaintiff and the Putative Class have suffered damages in the form of increased

4    insurance premiums, escrow charges, interest payments, and/or other charges, and

5    unnecessary burdens on their property rights.  Plaintiff and the Putative Class are

6    entitled to recover these damages and other appropriate relief from Defendants.

7                          **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiff, on behalf of himself and the Putative Class, prays

9    for relief as follows:

10            A.   Leave to amend to add claims under state consumer

11       protection statutes, including but not limited to the Texas Deceptive

12       Trade Practices Act (DTPA), Tex. Bus. & Com. Code. 17.41, et seq.;

13            B.   Determination that this action may proceed as a class action

14       under Rule 23(b) (2) and (3) of the Federal Rules of Civil Procedure;

15            C.   Designation of Plaintiff as representative of the Putative

16       Class;

17            D.   Designation of Plaintiff's counsel as counsel for the Putative

18       Class;

19            E.   Issuance of proper notice to the Putative Class at

20       Defendants' expense;

21            F.   Declaration that Defendants' conduct was fraudulent and

22       violated the terms of their contracts;

23            G.   Declaration that Defendants acted willfully in deliberate or

24       reckless disregard of applicable law and the rights of Plaintiff and the

25       Putative Class;

26            H.   An award of appropriate equitable relief, including but not

27       limited to restitution and an injunction requiring Defendants to reverse all

28       unlawful, unfair, or otherwise improper charges for insurance coverage,

                                   -15-
                    SECOND AMENDED CLASS ACTION COMPLAINT

allowing customers to close loans or credit lines without first paying premiums for hazard insurance that were not necessary or required by law, and to cease and desist from engaging in further unlawful conduct in the future;

I.      An award of actual damages, statutory damages, treble damages, punitive damages, penalties, and interest;

J.      An award of reasonable attorneys' fees and costs, pursuant to Tex. Civ. Practice & Remedies Code § 38.001; and

K.      Grant of other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,  Plaintiff and the Putative Class demand a trial by jury.

Respectfully submitted,

Dated:  07 / 14 / 11              NICHOLS KASTER, PLLP

By: _____
Rebekah L. Bailey

NICHOLS KASTER, LLP

ATTORNEYS FOR INDIVIDUAL AND REPRESENTATIVE PLAINTIFF

-16-

# Exhibit A

WHEN RECORDED MAIL TO:
Bank of America Consumer Collateral Tracking, FL9-700-04-12
9000 Southside Blvd, Bldg 700
Jacksonville, FL 32256

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
THE EXTENSION OF CREDIT EVIDENCED BY THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.

THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST dated January 17, 2008, is made and executed between KENT FARMER AKA KENT R FARMER, AN UNMARRIED PERSON (referred to below as "Owner") and Bank of America, N.A., whose address is 901 Main St., 67th Floor, Dallas, TX  75202 (referred to below as "Lender").

GRANT OF LIEN.  For valuable consideration, Owner grants a lien under Section 50(a)(6), Article XVI, Texas Constitution in and to the following described real property, together with all improvements, all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the improvements, or the Real Property; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to (the "Real Property") located in BEXAR County, State of Texas:

See Exhibit A, which is attached to this Homestead Lien Contract and made a part of this Homestead Lien Contract as if fully set forth herein.

The Real Property or its address is commonly known as | REDACTED |  The Real Property tax identification number is | REDACTED |

Owner conveys the Real Property to Trustee in trust for the benefit of Lender as hereinafter set forth.

THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS HOMESTEAD LIEN CONTRACT AND DEED OF TRUST.  THIS HOMESTEAD LIEN CONTRACT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

HOMESTEAD PROPERTY.  Owner represents to Lender that the Property is Owner's homestead.  If a part of the Property is not now, or at any time in the future is determined not to be, Owner's homestead, Lender hereby disclaims any lien on such non-homestead property, it being Lender's intention to obtain a lien, as provided for by Section 50(a) (6), Article XVI, Texas Constitution, in Owner's homestead property only.  If the Property, as a whole, is determined not to be Owner's homestead, this lien shall be governed by other applicable Texas law.

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Homestead Lien Contract, Owner shall pay to Lender all amounts secured by this Homestead Lien Contract as they become due and shall strictly perform all of Owner's obligations under this Homestead Lien Contract.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Owner agrees that Owner's possession and use of the Property shall be governed by the following provisions:

Duty to Maintain.  Owner shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Nuisance, Waste.  Owner shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Owner will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.  This restriction will not apply to rights and easements (such as gas and oil) not owned by Owner and of which Owner has informed Lender in writing prior to Owner's signing of this Homestead Lien Contract.

Removal of Improvements.  Owner shall not demolish or remove any improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any improvements, Lender may require Owner to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

Lender's Right to Enter.  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Owner's compliance with the terms and conditions of this Homestead

Exhibit A
17

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
### (Continued)

Loan No: REDACTED

Page 2

Lien Contract.

**Compliance with Governmental Requirements.** Owner shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Owner may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Owner has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Owner to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Owner agrees neither to abandon or leave unattended the Property. Owner shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Homestead Lien Contract upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Homestead Lien Contract:

**Payment.** Owner shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Owner shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Homestead Lien Contract, except for the lien of taxes and assessments not due and except as otherwise provided in this Homestead Lien Contract.

**Right to Contest.** Owner may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Owner shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Owner has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Owner shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Owner shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Owner shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Owner shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Owner will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Owner can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Homestead Lien Contract:

**Maintenance of Insurance.** Owner at Lender's request shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Owner shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Owner or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Owner agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Owner shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Owner fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Owner shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Owner from the proceeds for the reasonable cost of repair or restoration if Owner is not in default under this Homestead Lien Contract. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Homestead Lien Contract, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Owner as Owner's interests may appear.

**LENDER'S EXPENDITURES.** If Owner fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Owner's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. To the extent permitted by applicable law, all expenses paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Owner. To the extent permitted by applicable law, all such expenses will become a part of the indebtedness and, at Lender's option, will be payable on demand. The Homestead Lien Contract also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition

Exhibit A
18

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
### (Continued)

Loan No: REDACTED

Page 3

to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Homestead Lien Contract:

**Title.** Owner warrants that: (a) Owner holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Homestead Lien Contract, and (b) Owner has the full right, power, and authority to execute and deliver this Homestead Lien Contract to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Owner warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Owner's title or the interest of Lender under this Homestead Lien Contract, Owner shall defend the action at Owner's expense. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Owner will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Owner warrants that the Property and Owner's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION, JUDGMENTS AND AWARDS.** The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Homestead Lien Contract:

**Application of Net Proceeds.** To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Owner shall promptly notify Lender in writing, and Owner shall promptly take such steps as may be necessary to defend the action and obtain the award. Owner may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Owner will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Homestead Lien Contract:

**Current Taxes, Fees and Charges.** Upon request by Lender, Owner shall execute such documents in addition to this Homestead Lien Contract and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. To the extent permitted by applicable law, Owner shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Homestead Lien Contract, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Homestead Lien Contract.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Homestead Lien Contract or upon all or any part of the Indebtedness secured by this Homestead Lien Contract; (2) a specific tax on Owner which Owner is authorized or required to deduct from payments on the Indebtedness secured by this type of Homestead Lien Contract; (3) a tax on this type of Homestead Lien Contract chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Owner.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Homestead Lien Contract, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Owner either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Homestead Lien Contract:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Owner will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Owner's obligations under the Note, this Homestead Lien Contract, and the Related Documents, and (2) the liens and security interests created by this Homestead Lien Contract as first and prior liens on the Property, whether now owned or hereafter acquired by Owner. Unless prohibited by law or Lender agrees to the contrary in writing, Owner shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** To the extent permitted by applicable law, if Owner fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Owner and at Owner's expense. For such purposes, Owner hereby irrevocably appoints Lender as Owner's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Owner pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Owner under this Homestead Lien Contract, Lender shall execute and deliver to Owner a suitable satisfaction of this Homestead Lien Contract. Owner will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** At Lender's option, Owner will be in default under this Homestead Lien Contract if any of the following happen:

**Payment Default.** Owner fails to make any payment when due under the Indebtedness.

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
### (Continued)

Loan No: [REDACTED]

Page 4

**Default on Other Payments.** Failure of Owner within the time required by this Homestead Lien Contract to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Owner fails to timely and strictly perform all promises made to Lender contained in this Homestead Lien Contract or in an agreement related to this Homestead Lien Contract.

**False Statements.** Any representation or statement made or furnished to Lender by Owner or on Owner's behalf under this Homestead Lien Contract or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Homestead Lien Contract or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected lien) at any time and for any reason.

**Death or Insolvency.** The death of Owner, the insolvency of Owner, the appointment of a receiver for any part of Owner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Owner.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property. However, if Owner disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Owner gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Right to Cure.** If such a failure is curable, it may be cured if Owner, after Lender sends written notice demanding cure of such failure: (a) cures the failure within twenty (20) days; or (b) if the cure requires more than twenty (20) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** After giving any required notice of default and after Owner's failure to cure the default during any required cure period, Lender may declare due the entire Indebtedness.

**Foreclosure By Court Order Only.** If Lender forecloses upon the lien granted in this Homestead Lien Contract, Lender will comply with the applicable rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings as those rules may change from time to time, or Lender may exercise such other remedy as may be available to Lender for loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. When Lender has complied with the appropriate procedures to obtain permission to foreclose pursuant to Section 51.002 of the Texas Property Code, as it may be amended from time to time, Lender may request the Trustee to foreclose by power of sale and the Trustee shall do so consistently with the rules of civil procedure and Section 51.002 of the Texas Property Code. The Trustee shall have all the powers granted to a trustee under the terms of Section 51.002 of the Texas Property Code and all amendments thereto and all other rights and remedies that are now available to or may hereafter be granted to Trustee to the extent such rights and remedies are consistent with loans made pursuant to the authority of Section 50(a)(6), Article XVI of the Texas Constitution. Lender may appoint in writing a substitute or successor Trustee, succeeding to all rights and responsibilities of Trustee. If an Event of Default occurs, and after court order, Trustee is requested by Lender to foreclose this lien, the Trustee shall (1) either personally or by agent, give notice of the foreclosure sale as required by the Texas Property Code as then amended, (2) sell and convey all or part of the Property to the highest bidder for cash with a general warranty deed binding Owner, subject to prior liens and to other exception to conveyance and warranty, and (3) from the proceeds of the sale, pay in order: (a) expenses of foreclosure; (b) to Lender the full amount of principal, interest and other permitted charges; (c) any amounts required by law to be paid before payments to Owner; and (d) to Owner any balance.

**No Deficiency Judgment.** Lender shall not obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Rights and Remedies on Default section unless the Indebtedness was obtained by Owner by actual fraud.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Homestead Lien Contract or the Note or available at law or in equity.

**Cure Notice.** Owner acknowledges and agrees that Article XVI, Section 50(a)(6)(Q)(x) of the Texas Constitution provides Lender and any holder of this Homestead Lien Contract with the right to correct a failure to comply with Lender's or holder's obligations under the extension of credit. A notice of non-compliance with applicable law to Lender or the holder of this Homestead Lien Contract may be in writing and mailed to:

Bank of America, N.A.
Attn: Portfolio Administration
P.O. Box 26865
Richmond, VA 23261-9914

or to a different address if Owner is given notice pursuant to this Homestead Lien Contract of that different address.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Owner's obligations under this Homestead Lien Contract, after Owner's failure to do so, that decision by Lender will not affect Lender's right to declare Owner in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Homestead Lien Contract, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Owner also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure

Exhibit A
20

## HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
### (Continued)

of this Homestead Lien Contract, Lender shall be entitled to recover from Owner Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

**NOTICES.** Any other notice required to be given under this Homestead Lien Contract shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Homestead Lien Contract. Any person may change his or her address for notices under this Homestead Lien Contract by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Owner agrees to keep Lender informed at all times of Owner's current address. Unless otherwise provided or required by law, if there is more than one Owner, any notice given by Lender to any Owner is deemed to be notice given to all Owners. It will be Owner's responsibility to tell the others of the notice from Lender.

**INSURANCE.** Notwithstanding any language to the contrary in this Homestead Lien Contract or in any Related Document, if this Homestead Lien Contract secures an extension of credit pursuant to Section 50(a)(6), Article XVI, Texas Constitution, Lender does not require fire insurance with standard extended coverage endorsements on the property. However, if as of the date of this Homestead Lien Contract, Owner has in force such insurance on the Property, then all such policies covering loss or damage to the Property shall include a standard non contributory mortgagee clause in favor of Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Homestead Lien Contract:

**Amendments.** What is written in this Homestead Lien Contract and in the Related Documents is Owner's entire agreement with Lender concerning the matters covered by this Homestead Lien Contract. To be effective, any change or amendment to this Homestead Lien Contract must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Governing Law.** This Homestead Lien Contract will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Homestead Lien Contract has been accepted by Lender in the State of Texas.

**Caption Headings.** Caption headings in this Homestead Lien Contract are for convenience purposes only and are not to be used to interpret or define the provisions of this Homestead Lien Contract.

**Merger.** There shall be no merger of the interest or estate created by this Homestead Lien Contract with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**No Waiver by Lender.** Owner understands Lender will not give up any of Lender's rights under this Homestead Lien Contract unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Owner will not have to comply with the other provisions of this Homestead Lien Contract. Owner also understands that if Lender does consent to a request, that does not mean that Owner will not have to get Lender's consent again if the situation happens again. Owner further understands that just because Lender consents to one or more of Owner's requests, that does not mean Lender will be required to consent to any of Owner's future requests. Owner waives presentment, demand for payment, protest, notice of dishonor, notice of intent to accelerate, and notice of acceleration.

**Savings Clause.** It is agreed that notwithstanding any provision of this Homestead Lien Contract to the contrary, in no event shall this Homestead Lien Contract require or permit any action which would be prohibited by Section 50(a)(6), Art. XVI, Texas Constitution, and all provisions of this Homestead Lien Contract shall be modified to comply fully with Section 50(a)(6), Art. XVI, Texas Constitution. In particular, this section means (among other things), that Owner does not agree or intend to pay, and Lender does not agree or intend to contract for, charge or collect, any amount in the nature of a fee or charge for the indebtedness which would in any way or event cause Lender to charge or collect more for extension of credit than the maximum Lender would be permitted to charge or collect by the laws of the State of Texas.

**Severability.** If a court finds that any provision of this Homestead Lien Contract is not valid or should not be enforced, that fact by itself will not mean that the rest of this Homestead Lien Contract will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Homestead Lien Contract even if a provision of this Homestead Lien Contract may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Homestead Lien Contract on transfer of Owner's interest, this Homestead Lien Contract shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Owner, Lender, without notice to Owner, may deal with Owner's successors with reference to this Homestead Lien Contract and the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Homestead Lien Contract.

**Waive Jury.** All parties to this Homestead Lien Contract hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following words shall have the following meanings when used in this Homestead Lien Contract:

**Borrower.** The word "Borrower" means KENT FARMER.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Homestead Lien Contract in the default section of this Homestead Lien Contract.

**Homestead Lien Contract.** The words "Homestead Lien Contract" mean this Homestead Lien Contract and Deed of Trust between Owner and Lender.

**Improvements.** The word "Improvements" means all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Owner's obligations or expenses incurred by Lender to enforce Owner's obligations under this Homestead Lien Contract, together with interest on such amounts as provided in this Homestead Lien Contract.

Loan No: [REDACTED]

# HOMESTEAD LIEN CONTRACT AND DEED OF TRUST
## (Continued)

Page 6

**Lender.** The word "Lender" means Bank of America, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated January 17, 2008, in the principal amount of $117,608.99 from KENT FARMER to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Owner.** The word "Owner" means KENT FARMER. The words "Owner" and "Borrower" are used interchangeably.

**Property.** The word "Property" means collectively the Real Property and the Improvements. Notwithstanding language in any other agreement with Lender by Owner, the Indebtedness is secured by the Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Homestead Lien Contract.

**Related Documents.** The words "Related Documents" mean all promissory notes, loan agreements, environmental agreements, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Trustee.** The word "Trustee" means PRLAP, INC., whose address is 901 MAIN ST., DALLAS, TX 75202-3714, and any substitute or successor trustees.

OWNER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS HOMESTEAD LIEN CONTRACT, AND OWNER AGREES TO ITS TERMS. OWNER ACKNOWLEDGES THAT ALL BLANKS WERE FILLED IN PRIOR TO OWNER SIGNING THIS HOMESTEAD LIEN CONTRACT. OWNER FURTHER ACKNOWLEDGES THAT OWNER RECEIVED A COPY OF THE DISCLOSURES REQUIRED BY SECTION 50(g), ARTICLE XVI, TEXAS CONSTITUTION, AT LEAST 12 DAYS PRIOR TO THE DATE OF THIS HOMESTEAD LIEN CONTRACT.

OWNER:

X _____
   KENT FARMER

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____     )
                                 ) SS
COUNTY OF _____     )

This instrument was acknowledged before me on _____, 20_____ by KENT FARMER.

_____
Notary Public, State of Texas

LASER PRO Lending, Ver. 5.39.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - TX O:\OFFICE\FIL\A1006.FC TR-22201633 PR-TXHELOAN

# Exhibit B

# PROMISSORY NOTE

**ACCOUNT NUMBER** REDACTED

**Borrower:** KENT FARMER
REDACTED

**Lender:** Bank of America, N.A.
c/o Texas Main Office
901 Main St.
67th Floor
Dallas, TX 75202

---

**Principal Amount: $117,608.99**     **Interest Rate: 6.000%**     **Date of Note: January 17, 2008**

**PROMISE TO PAY.** I ("Borrower") promise to pay to Bank of America, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Seventeen Thousand Six Hundred Eight & 99/100 Dollars ($117,608.99), together with interest at the rate of 6.000% per annum on the unpaid principal balance from January 23, 2008, until maturity. The interest rate may change under the terms and conditions of the "POST MATURITY RATE" section.

**PAYMENT.** I will pay this loan in 299 payments of $757.89 each payment and an irregular last payment estimated at $757.42. My first payment is due February 22, 2008, and all subsequent payments are due on the same day of each month after that. My final payment will be due on January 22, 2033, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to : first, all interest due and owing on the date payment is credited, then to principal, then to fees or charges due under this Note, including any unpaid collection costs and late charges. Interest on this Note is computed on a 365/366 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will relieve me of my obligation to continue to make payments under the payment schedule and will be applied to the next - due payment(s). If a prepayment is insufficient to meet the entire requirements of a particular future installment then I shall be obligated to pay such portion of the installment not covered by the partial prepayment. My obligation to continue to make regular payments under the payment schedule will resume with the next payment coming due after all early payments have been applied. Early payments will reduce the principal balance due and may result in my making fewer payments. I agree not to send Lender payments marked "paid in full", "without recourse" or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under the Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any checks or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Lender at the address shown on my coupon book or statement.

**FEES LIMITED.** Notwithstanding any provision to the contrary in this Note or any document related to this Note, I do not agree or intend to pay, and Lender does not agree or intend to charge or collect, any fee or charge that would in any way cause Lender to charge or collect more than the maximum Lender would be permitted to charge under Section 50(a)(6), Article XVI, Texas Constitution.

**POST MATURITY RATE.** I will continue to pay interest on all sums due after final maturity, whether by acceleration or otherwise, at the note rate in effect at the time of the final maturity.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I fail to timely and strictly perform all promises made to Lender contained in this Note or in an agreement related to this Note.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Cure Provisions.** If any default, other than a default in payment is curable, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which I am responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then I will pay that amount. Upon default, after giving any required notice of default and after my failure to cure the default during any required cure period, Lender may declare due the entire indebtedness, including the unpaid principal balance, accrued unpaid interest, and all other amounts, costs and expenses for which I am responsible under this Note or any other agreement with Lender pertaining to this loan and I will then pay that amount. Lender's remedies in the event this Note is not paid at maturity, however that maturity happens, is to look exclusively to the collateral for this Note, and no deficiency or monetary judgment, execution, attachment or other writ or process shall be sought, issued, or levied upon or against me or upon any assets, properties or funds other than the collateral described in this Note, unless the advance evidenced by this Note is obtained by actual fraud on my part.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if I do not pay, and I will pay Lender's reasonable attorneys' fees. I also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me

Exhibit B
23