IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENT FARMER, as an individual and as a representative of the putative class, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL NO. 5:11-CV-00935-OLG |
| BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING, L.P., | § § § | |
| *Defendants*. | § § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT**

**MOTION**

NOW COMES Plaintiff Kent Farmer ("Plaintiff") to submit the following request for preliminary approval of the proposed class action settlement. Plaintiff requests that the Court: (1) preliminarily approve the proposed settlement; (2) certify the class for settlement purposes; (3) approve the form and manner of settlement notice; (4) appoint Plaintiff as class representative; (5) appoint Nichols Kaster, PLLP as class counsel; and (6) schedule a final fairness hearing. Defendant does not oppose this motion. In support, Plaintiff states the following:

**MEMORANDUM**

**I.      BACKGROUND OF LITIGATION**

On May 13, 2011, Plaintiff filed this action in the Central District of California (ECF No. 1) on behalf of two proposed Rule 23 classes who had loans or lines of credit through Defendant and who were required by Defendant to purchase hazard insurance allegedly in violation of their agreements with Defendant. Plaintiff later amended his complaint three more times to refine the

class definition and allegations.  In the operative complaint the putative class is defined as "All persons who have or had a loan or line of credit with Defendants that was made pursuant to Section 50(a)(6), Article XVI, Texas Constitution within the applicable statute of limitations." (ECF No. 37 ¶ 52.)  Plaintiff asserts several claims on behalf of this class: breach of contract, common law fraud, and violations of the Texas Deceptive Trade Practices Act ("DTPA") (ECF No. 37).  Plaintiff's allegations center on Defendant's alleged practice of misrepresenting to class members that they are required to purchase hazard insurance (or be force-placed with it) even though the language of their mortgage agreements specifically states they are not.  On November 8, 2011, this action was transferred to the Western District of Texas (ECF No. 45).

On December 4, 2012, the parties engaged in mediation with qualified neutral Thomas J. Smith.  Prior to mediation, the parties exchanged written discovery and documents.  Plaintiff took 30(b)(6) depositions of two corporate designees of Defendant, and Defendant took Plaintiff's deposition.  Defendant produced extensive class data, including loan-level data regarding the letters that were sent regarding loan requirements, the dates on which insurance was procured, the amount of the premiums for each loan, and the amount of coverage purchased by borrowers.  Plaintiff and an outside expert conducted a detailed analysis of that data. Defendant filed a motion for judgment on the pleadings (ECF No. 62), which was been fully briefed but not ruled upon.  Plaintiff had not yet filed his motion for class certification but was prepared to do so.

After conducting a full day of arms-length negotiations, the parties reached agreement on core terms of settlement and agreed to work towards a formal settlement agreement.  The parties continued their negotiations after the mediation and agreed to the final settlement agreement

(Exhibit A)[1] on April 19, 2013.   Plaintiff now brings the settlement before the Court for preliminary approval.

## II.      EXPLANATION OF SETTLEMENT

### A.  Overview

The proposed settlement resolves the settlement class members' claims against Defendant regarding Defendant's requirement that borrowers maintain hazard insurance allegedly in violation of the specific language of their loans.  The settlement class is specifically defined as

> [m]ortgagors whose mortgages were secured by real property in Texas to whom Bank of America sent a letter requesting proof of hazard insurance after May 13, 2007 and/or whose loans were actively being serviced by Bank of America as of October 16, 2012 and whose deeds of trust contain either of the  following provisions:
>
> INSURANCE. Notwithstanding any language to the contrary in this Homestead Lien Contract or in any Related document, if this Homestead Lien Contract secures an extension of credit pursuant to Section 50(a)(6), Article XVI Texas Constitution, Lender does not require fire insurance with standard extended coverage endorsements on the property.
>
> or:
>
> Except insurance against floods and flooding, Bank of America does not require Grantor to maintain insurance on the Property against loss by fire, hazards included within the term "extended coverage" and any other hazards.

Exhibit A § 1.05.  There are approximately 40,000 class members.  Defendant has since stopped using this language in new loans, but still owns and/or services many existing loans which contain this language.   Plaintiff alleges that during the class period, Defendant tracked borrowers' hazard insurance, and sent borrowers for whom it did not have proof of current hazard insurance letters, referred to as "cycle letters," claiming that hazard insurance was

---

[1] All Exhibits referenced herein are attached to the Declaration of E. Michelle Drake ("Drake Decl.").  Exhibit A is a true and correct copy of the parties' Settlement Agreement.  While it is currently not fully executed, all parties agree to its substance, terms, and exhibits.  A fully executed copy will be filed with the Court prior to the hearing on this Motion.

required.  During the class period, approximately 26,500 borrowers received these letters.  If a borrower did not respond to Defendant's letters with proof of coverage, Defendant purchased insurance for the property and charged the borrower's escrow account for the premium.  If the borrower did not have a pre-existing escrow account, Defendant created one and subtracted the premiums from it.  Borrowers fall into several natural categories.  Some borrowers never received a cycle letter from Defendant because they voluntarily maintained hazard insurance.  Some borrowers maintained hazard insurance voluntarily, but received cycle letters because Defendant did not have proof of their insurance.  Some borrowers received cycle letters and bought insurance in response.  Finally, some borrowers received letters, but did not purchase insurance, and were instead force placed with insurance by Defendant.   During the class period, approximately 5,000 class members were force-placed with hazard insurance by Bank of America.

The settlement provides relief for all of these borrowers, as follows:

- On or before the notice mailing date, Defendant will re-code class members loans so that class members who do not have force placed insurance in effect on the notice mailing date will not receive cycle letters;

- Within thirty days of final approval Bank of America will cease sending all class members letters demanding that they purchase hazard insurance, and will also cease purchasing force-placed insurance on class members' properties.  Exhibit A § 3.01.

- Borrowers who have force-placed insurance in effect on the Effective Date ("Current LPI Category") of the settlement will be given the option to cancel their insurance (retroactively to the date it was issued) and receive a full refund.  Or,

4

they can elect to cancel prospectively and receive a refund of all unearned premiums. These borrowers will receive a 100% recovery, without deduction for attorneys' fees. Id. § 2.01(1).

- Borrowers who had force-placed insurance in effect during the class period will receive a refund of 60% of the premiums they paid, less Court approved reductions for attorneys' fees and litigation and administration costs. Id. § 2.01(2).

- Borrowers who were force-placed during the class period and who have subsequently been foreclosed upon ("Foreclosure Category") will receive a refund of 30% of their premiums, less Court approved reductions for attorneys' fees and litigation and administration costs. Id. § 2.01(3).

- Class members who received cycle letters from Defendant from May 13, 2007 to the date of Class Notice ("Preferred Category") and who subsequently purchased or maintained "preferred" hazard insurance from their own insurance carrier will have the opportunity to make a claim for a refund of their premiums from a pool of $2.16MM Defendant will make available pursuant to the terms of this settlement. Id. § 2.01(4).

Class members who fall into more than one category are eligible to receive cumulative benefits, with the exception of Foreclosure Category class members. Id. § 2.01. Borrowers who have active escrow accounts with Defendant on the effective date will receive escrow account credits. Id. § 2.03. Inactive borrowers, borrowers in the Preferred Category, and borrowers in the Foreclosure Category will receive checks. Id. § 2.02.

**B.  Class Notice**

Subject to the approval of the Court, notice will be sent to class members in the form attached to Exhibit A as Exhibit 1.  The notice is based on the Federal Judicial Center model notice for class actions (www.fjc.gov) and informs each class member of the terms of the settlement, including his or her right to object or opt-out of the class and not be bound by the settlement, and informs them of the deadline and manner in which to do these things.  Exhibit A at Article IV(C), Exhibit 1.

The settlement administrator, Garden City Group, will mail notice to all class members via U.S. mail, postage pre-paid.  Exhibit A § 4.06.  The list of class members to be mailed to is to be determined by Defendant from its searchable computer system and will contain information regarding the names of the borrower(s) associated with each loan covered by the class definition, the address of the property secured by the loan and the last known mailing address associated with the loan.  Id. § 4.07.  The settlement administrator will run the list through the National Change of Address database to ensure current addresses are used for mailing.  Id.  Should the database indicate that borrowers associated with the same loan now live at separate addresses, a notice will be sent to each address.  Id.  If a notice is returned to the settlement administrator and contains a forwarding address, the administrator will re-mail the notice to the forwarding address.  Id. § 4.11.  If a notice is returned and does not contain a forwarding address, the administrator will perform a standard skip trace to identify a valid address and will then re-mail.  Id. § 4.12.  The costs of distributing notice and administering the settlement will be paid from the settlement fund established by Defendant.  Id. § 4.09.

**C.  Incentive Award to Class Representative**

Plaintiff intends to seek an order from the Court awarding Named Plaintiff Kent Farmer $10,000, to be paid directly from the settlement fund, as consideration for acting as Named Plaintiff in this litigation[2], and as consideration for the general release Named Plaintiff is giving Defendant pursuant to the settlement agreement.  Defendant does not oppose Plaintiff's request for approval of an award in this amount.  The settlement is not conditioned on the Court approving this request.

### D.  Attorneys' Fees and Expenses

Plaintiff intends to seek an order from the Court awarding Plaintiff's Counsel attorneys' fees in an amount not to exceed thirty-three percent (33%) of the settlement fund and customary, reasonable, and documented out-of-pocket expenses in the amount they were incurred (together, the "Agreed Amount"), to be paid directly from the settlement fund.  Defendant does not oppose Plaintiff's request for approval of the Agreed Amount.  The settlement is not contingent on any specific fee amount being awarded.

The use of a common fund to pay attorneys' fees in class action settlements is well established.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L.Ed.2d 676 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").  Moreover, 33% of a common fund of this size is well within the range of reasonable fee percentages for this type and size of settlement.  *See Schwartz v. TXU Corp.*, Case No. 3:02-CV-2243-K, 2005 WL 3148350 *25, (N.D. Tex. November 8, 2005) (collecting cases).  This, combined with the Court's ongoing authority to render a final decision on fees, renders the settlement worthy of preliminary approval.

---

[2] Named Plaintiff has taken an active role in the litigation.  *See*, *infra*, § III(A)(1)(iv).

### III.    ARGUMENT

The federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement"); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th Ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  A proposed class action settlement should be approved as long as it is fair, adequate and reasonable and is not the product of collusion between the parties.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005).

In the preliminary approval stage, the court need only make an initial determination that the proposed settlement is within the range of what may be found to be fair, adequate and reasonable and that notice should be sent to the class.  As stated in the *Manual for Complex Litigation* (Fourth) § 21.632 (2004), "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" and "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."

The parties' settlement of this matter falls well within the range of what is fair, reasonable and adequate.  Further, the settlement class to be certified meets the prerequisites under Fed. R. Civ. P. 23(a) and (b) and should be sent notice.[3]

---

[3] Rules 23(a) and 23(b) apply equally in determining class certification for settlement purposes except the judge need not determine "whether a case, if tried, would present intractable

**A.  The Settlement Class Should Be Certified for Settlement Purposes**

    1.  The Prerequisites of Rule 23(a) are Met

        i.  *The Proposed Settlement Class Meets the Numerosity Requirement*

The first element of the four-part threshold for class certification requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2562, n.2 (2011).  While the Rules do not provide a set number of class members to satisfy the numerosity requirement, courts in the Fifth Circuit and around the country have found that classes with forty or more members presumptively satisfy the requirement.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (suggesting that "any class consisting of more than forty members 'should raise a presumption that joinder is impracticable'"); *Consolidated Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that forty or more prospective class members raises a presumption of numerosity); *In re Rodriguez*, 432 B.R. 671, 692 (Bankr. S.D. Tex. 2010) (citing *Mullen* and stating that a presumption of impracticable joinder is raised when a "class consists of more than forty members"); *Humphrey v. United Way of Texas Gulf Coast*, No. H-05-0758, 2007 WL 2330933 (S.D. Tex. Aug. 14, 2007) (stating that "[g]enerally, a class size of more than forty members satisfies the numerosity requirement").

There are approximately 40,000 class members.  Of these, approximately 26,500 individuals received cycle letters.  Joinder of all members is impracticable.  Thus, the requirement of Fed. R. Civ. P. 23(a)(1) is easily met in this case.

---

management problems."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), *Manual for Complex Litigation* (Fourth) § 21.132 (2004).

ii.      *The Class Shares Common Questions of Law and Fact*

Under Fed. R. Civ. P. 23(a)(2), "[c]ommonality requires that all of the class members' claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'"  *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551).  For purposes of Rule 23(a)(2), even a single common question will do.  *Dukes*, 131 S. Ct. at 2556.  While there may be minor differences between class members, "[t]he interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  *Billitteri v. Sec. Am., Inc.*, No. 3:11-cv-00191-F, 2011 WL 3586217 at *4 (N.D. Tex. Aug. 4, 2011) (quoting *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).

Here, Plaintiff and the potential class members are or were all mortgagors whose Deeds of Trust have virtually identical hazard insurance language.  Because Defendant's conduct in sending cycle letters or placing insurance is measured against this language, the class members' claims pose common issues "of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'"  *M.D. ex rel Stukenberg*, 675 F.3d at 840 (quoting *Dukes*, 131 S. Ct. at 2551).

iii.     *The Named Plaintiff's Claims are Typical of the Class Claims*

Plaintiff and the settlement class also satisfy the typicality requirement of Rule 23(a)(3).  Typicality and commonality are similar and tend to merge.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Neither test is very demanding, but typicality is a different element because it "focuses on the similarity between the named plaintiffs' legal and remedial theories

and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997) (internal citations omitted).

Courts have found that typicality exists in cases with circumstances similar to Plaintiff's. *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636, at 1 (5th Cir. 2000) (determining that typicality would exist if, like the plaintiff, all class members were systematically overcharged for premiums based on "force-placed collateral protection insurance"); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 673 (S.D. Fla. 2012) (explaining that typicality exists because "the theory of liability is identical, namely that Wells Fargo and QBE colluded and charged the class member excessive and inflated insurance premiums for their force-placed insurance"); *Hofstetter v. Chase Home Finance, LLC*, No. C 10-01313, 2011 WL 1225900 at *9 (N.D. Cal. March 31, 2011) (finding that typicality was satisfied because the named plaintiffs' "claims likely differ from those of other class members only as to damages and other immaterial factual details"). Here, Plaintiff Farmer was force-placed with hazard insurance and paid the force-placed premiums to Bank of America.  In order to avoid additional force-placement, he subsequently purchased a policy from a private ("preferred") insurer.

The settlement class members' claims arise from a common course of conduct and each of the class members would bring claims based on the same conduct and under the same legal theories as Plaintiff should they have to proceed on an individual basis.  The settlement class members' "legal and remedial theories [will be] similar, if not identical to those advanced by the named plaintiff."  Typicality therefore exists.

       *iv.*    *The Class Representative and Class Counsel are Adequate*

Finally, Rule 23(a)(4) requires that the "class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."

*Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).  When considering this requirement, courts must take into account "the zeal and competence of the representative's counsel and [] the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees."  *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).  In addition, district courts are also responsible for uncovering any conflicts of interest between the named plaintiff and the putative class.  *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Plaintiff is committed to fairly and adequately representing the interests of all class members.  Plaintiff has no adverse interests to the class.  Moreover, he has been actively involved in the litigation, assisting in the investigation of claims for the complaint, participating in written discovery and sitting for a deposition.  Likewise, Nichols Kaster, PLLP has adequately represented Plaintiff and the class by vigorously pursuing litigation of this matter.  Nichols Kaster has taken depositions of key witnesses, served two sets of discovery requests, and engaged in motion practice.  Nichols Kaster is an experienced class action litigation firm, has previously been appointed class counsel in other force-placed insurance cases, and is litigating numerous similar cases around the country.  (*See* Exhibit B.)

2.  The Prerequisites of Rule 23(b) are Met

Once the Rule 23(a) requirements have been met, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem*, 521 U.S. at 614.  Rule 23(b)(3) requires that the plaintiff demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy."  *Feder*, 429

F.3d at 129 (quoting *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)).  The prerequisites of Rule 23(b)(3) are satisfied here.

      *i.*     *Predominance*

Like the commonality requirement of Rule 23(a), predominance requires that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members."  *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (quoting *Unger*, 401 F.3d at 320).  As previously noted, the central issue for the class is whether Defendant's policy of requiring class members to either purchase or be force-placed with hazard insurance violated their loan agreements with Defendant.  This core issue is common to all members of the class and is clearly predominant in this litigation, as it is determinative of liability.

      *ii.*    *Superiority*

Superiority under Rule 23(b)(3) is met when a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  A class-wide settlement is the superior method for the class here, especially when considering the cost and time involved in individual litigation.  Each class member has a small claim individually that would potentially not be efficient to be pursued on its own.  The Supreme Court has noted the necessity of class representation for these types of claims to be heard.  *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  As stated in *Amchem*, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an

attorney's) labor." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  The class here consists of thousands of loans, each with a relatively small claim for damages.  *See Musmeci v. Schwegmann Giant Super Markets*, CIV.A. 97-2757, 2000 WL 1010254 (E.D. La. July 20, 2000) *amended*, CIV. A. 97-2757, 2000 WL 1185510 (E.D. La. Aug. 18, 2000) (claims for $2,592 per year for duration of individual's retirement small enough to make joinder impracticable); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 299 (5th Cir. 2001) (class members were potentially entitled to varying amount damages, from nominal to $29,000).  Class certification in this case is therefore necessary to allow all class members to receive relief for their claims in a cost-effective manner.

In sum, the settlement class members' claims meet the requirements of Rule 23(b)(3) and should be certified.

**B.  The Court Should Grant Preliminary Approval of the Proposed Settlement**

The Fifth Circuit has laid out certain factors to be considered when determining whether or not to approve a settlement.  *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  These factors are: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives and absent class members.  *Id*.  At the preliminary approval stage though, the court is not required to engage in a rigorous analysis of these factors.  *See Manual for Complex Litigation* (Fourth) § 21.63 (2004) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not engage in analysis as rigorous as is appropriate for final approval"); *see also In re OCA, Inc. Securities and Derivative Litig.*,

No. 05-2165, 2008 WL 4681369 at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval").   The proposed settlement here easily meets this preliminary threshold as detailed below and should be granted preliminary approval.

    1.   <u>The Settlement Was Obtained Through Arm's-Length Negotiations</u>

      When a settlement is reached through arm's-length negotiations between experienced counsel, as is the case here, a presumption of fairness is allowed for the proposed settlement. *United States v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has acknowledged that the courts need to rely on the judgment of qualified counsel.  *Reed*, 703 F.2d at 175.  Thus, if competent counsel determines that a settlement is in the class members' best interest, "the attorney's views must be accorded great weight."  *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).  Here, both Plaintiff's and Defendant's attorneys have extensive experience in dealing with class actions and class-wide settlements.  *See* Exhibit B..  Further, the settlement was reached after attending a formal mediation with a qualified neutral, Thomas Smith.  The parties' counsel firmly believe this settlement will provide great benefit to the class and is the best resolution for this matter.  Drake Decl. ¶ 3.

    2.   <u>The Stage of Proceedings and the Substantial Risks of Continued Litigation Weigh in Favor of Settlement</u>

      After almost two years of litigation, the parties have reached the stage in this matter where both sides are knowledgeable of the advantages and disadvantages of each claim and defense.  Written discovery and documents have been exchanged, depositions have been taken, and a motion for judgment on the pleadings has been briefed.  The parties are well aware of the risks remaining should this matter continue to be litigated rather than settled.  Plaintiff believes the class would be certified, but understands the negative impact on his claims should the Court

decide otherwise.  Defendant's motion for judgment on the pleadings is currently pending. Plaintiff believes the motion would be denied, but Defendant has put forth compelling arguments.  The stage of proceedings here has made clear the central issues of the case and has also shown that the way in which these issues would be resolved is by no means a certainty.  The parties reached the instant settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  This has given the parties the ability to fully understand the merits of the case and weigh the risks against the benefits provided by the settlement.

   3.   The Proposed Settlement Provides Fair and Substantial Relief to All Class Members

Under the terms of the proposed settlement, class members are entitled to receive benefits that directly correlate with their damages.  Class members will be able to cancel any current lender-placed hazard insurance and receive monetary benefits in the form of premiums charged for such policies.  Further, Defendant has agreed to cease its practice of distributing the cycle letters to class members in connection with loans covered by the class definition, and will cease force-placing hazard insurance all together for loans covered by the class definition.  This prospective relief is provided for the life of the loans.  These settlement terms provide substantial consideration for the resolution of this litigation and this consideration is directly related to the claims of the class.  By any measure, this is a reasonable result.

In sum, the proposed settlement certainly satisfies the preliminary analysis required and should be approved:  (1) there is no evidence of fraud or collusion as the settlement was reached through arm's-length negotiations by experienced counsel; (2) the stage of the proceedings thus far and the discovery conducted places the parties in an informed position to determine if settlement is the best option; (3) the risks to Plaintiff's claims inherent in further litigation weigh

16

in favor of this early resolution; (4) the settlement provides considerable benefits to the class that directly relate to the class members' damages; and (5) counsel for both parties consider the settlement to be fair and reasonable and the Named Plaintiff endorses the settlement.

### C. The Proposed Notice to the Class is Appropriate

Fed. R. Civ. P. 23(e) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  A settlement notice should be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

The form of notice and method of distribution the parties have agreed to, attached as Exhibit 1 to Exhibit A and described in Article IV(C) of Exhibit A and above in section II B, satisfy the "reasonable" standard of Fed. R. Civ. P. 23(e).  The notice informs class members of their right to opt-out of the class, the deadline and manner in which to do so, and details the release of claims should they choose to remain in the class.  *See* Exhibit 1 to Exhibit A.  The settlement administrator will run the class list provided by Defendant through the National Change of Address system and will direct mail to the most up-to-date addresses available.  And should a notice return as undeliverable, the settlement administrator will re-mail to any forwarding addresses provided, and if none are noted, will perform a skip-trace to attempt to find the class member.  Exhibit A §§ 4.11, 4.12.  This process is certainly "reasonably calculated" to inform all class members of the settlement and the rights associated with it.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed settlement; (2) certify the settlement class for settlement purposes; (3) approve the form and manner of settlement notice; (4) appoint Plaintiff as class representative; (5) appoint Nichols Kaster, PLLP and as class counsel; and (6) schedule a final fairness hearing.


Dated:    April 19, 2013                          NICHOLS KASTER, PLLP

                                                  /s/ E. Michelle Drake
                                                  E. Michelle Drake (#0387366)
                                                  Rebekah L. Bailey (#0389599)
                                                  Anna P. Prakash*
                                                          *admitted *pro hac vice*
                                                  4600 IDS Center
                                                  80 South 8th Street
                                                  Minneapolis, MN  55402
                                                  Telephone:  612.256.3200
                                                  Fax:  612.338.4878
                                                  drake@nka.com
                                                  bailey@nka.com
                                                  aprakash@nka.com

                                                  ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin David Lee Foster: dfoster@lockelord.com, dblankenship@lockelord.com

Daron L. Janis: djanis@lockelord.com, ppateman@lockelord.com

Robert T. Mowrey: rmowrey@lockelord.com, ksutton@lockelord.com

Thomas A. Connop: tconnop@lockelord.com, tle@lockelord.com

David L. Permut: dpermut@goodwinprocter.com

Matthew G. Lindenbaum: mlindenbaum@goodwinprocter.com


s/E. Michelle Drake
E. Michelle Drake

19